2022 IL App (4th) 210374

NO. 4-21-0374

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 24, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| ROBERT A. PAGE, | ) | No. 19CF127 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Turner and Cavanagh concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Robert A. Page, entered an open plea of guilty to aggravated driving

under the influence (DUI) of alcohol (625 ILCS 5/11-501(a) (West 2018)). The offense was a

Class 1 felony because defendant had three prior convictions for DUI and one for aggravated

DUI. 625 ILCS 5/11-501(d)(2)(D) (West 2018). The court sentenced defendant to 10 years in

prison. Defendant appeals orders denying his motions to withdraw his plea and to reconsider the

sentence. We affirm.

¶ 2                                I. BACKGROUND

¶ 3        Defendant was convicted of DUI in 1985, 1988, and 2005. In 2016, he was

charged with aggravated DUI in Woodford County case number 16-CF-42. Apparently unaware

of one of defendant's convictions, the prosecution pursued case number 16-CF-42 as if it were

defendant's third DUI offense rather than his fourth. Defendant pleaded guilty to aggravated DUI

in case number 16-CF-42. In November 2016, defendant was sentenced to four years' probation and 60 days in jail. That sentence would not have been authorized had defendant been charged with having three prior DUI convictions. See 625 ILCS 5/11-501(d)(2)(C) (West 2016) (a fourth violation of the DUI statute is a nonprobationable Class 2 felony).

¶ 4        On August 5, 2019, while defendant was on probation, he was stopped by a state trooper who suspected defendant was under the influence of alcohol. The next day, the State charged defendant by information with aggravated DUI in case number 19-CF-127. The State did not know about defendant's 1985 DUI conviction. Thus, the State charged this new offense as if it were defendant's fourth DUI prosecution rather than his fifth. This made the offense charged in count I of the information a nonprobationable Class 2 felony rather than a Class 1 felony. Count I of the information specifically stated that this was a nonprobationable Class 2 felony. The State also charged defendant with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)) for possessing "psilocybin mushrooms."

¶ 5        On August 6, 2019, defendant appeared in court for arraignment and to set bond in case number 19-CF-127. The pretrial bond report did not list defendant's 1985 DUI conviction. In court, the prosecutor and defense counsel both asserted that defendant had three prior DUI convictions. The court admonished defendant that the Class 2 aggravated DUI charge in count I was a nonprobationable offense.

¶ 6        Defendant posted bond. On September 3, 2019, he failed to appear for his preliminary hearing. The court issued a warrant for defendant's arrest. On September 5, 2019, a grand jury returned an indictment in case number 19-CF-127 that was similar to the previously filed information. The indictment alleged that count I was a Class 2 felony, but it did not specify

that it was a nonprobationable offense. At some point, the State also filed a petition to revoke defendant's probation in case number 16-CF-42.

¶ 7        Defendant was found in Michigan in December 2019. He was returned to Illinois to face the charges in case number 19-CF-127 and the petition to revoke probation in case number 16-CF-42. On January 14, 2020, defendant appeared in court restrained and in a wheelchair. The court noted defendant was "unresponsive" and "speaking uncontrollably." Defendant uttered nonsensical profanities. The court ordered an evaluation to determine whether defendant was fit to stand trial.

¶ 8        While the parties awaited the fitness evaluation, defendant returned to court on February 6, 2020. Defense counsel noted defendant now seemed lucid, though the prosecutor expressed concern that defendant was not taking his medication. The court stated that defendant now appeared to be of "sound mind." However, given that defendant's behavior at the last court date was "beyond normal," the court deemed it appropriate to proceed with the fitness evaluation.

¶ 9        Dr. Jean Clore submitted a report opining that defendant was fit to stand trial. Dr. Clore also opined that defendant did "not currently meet DSM-5 criteria for a psychiatric disorder or condition." In her report, Dr. Clore explained that jail records indicated defendant exhibited extremely unusual behavior in January 2020. Although defendant refused to take medications consistently, his symptoms quickly improved. Dr. Clore suspected defendant had been suffering from "a substance-induced psychosis" in January 2020.

¶ 10        On March 10, 2020, the court determined defendant was fit to stand trial. That day, defendant entered an open guilty plea to count I of the indictment in case number 19-CF-127 (aggravated DUI with three prior convictions). He also admitted to the allegations in

the petition to revoke probation in case number 16-CF-42. Although there was no agreement as to sentencing, the State agreed to nol-pros count II of the indictment in case number 19-CF-127 (possession of a controlled substance), along with some other traffic charges. The trial court accepted the guilty plea. However, in informing defendant about the sentencing consequences of his plea to count I, the court incorrectly admonished defendant as if this were his third DUI conviction. Specifically, instead of telling defendant he faced a mandatory prison sentence, the court told defendant he could be sentenced to probation, along with either 10 days in jail or 480 hours of community service. The court ordered a presentence investigation report (PSI).

¶ 11　　　　　The PSI identified defendant's 1985 DUI conviction. On June 2, 2020, the matter came before the court for sentencing in case numbers 19-CF-127 and 16-CF-42. When the court asked the prosecutor whether the State wished to present evidence in aggravation, the prosecutor said defense counsel "wanted a clarification on the record." Defense counsel explained that the PSI incorrectly stated defendant was eligible for probation on count I of case number 19-CF-127. The following colloquy then occurred:

> "THE COURT: Okay. And everybody agrees, according to the—the way this offense is charged and what [defendant] pled guilty to, that this is a nonprobationable offense; is that correct?
>
> [PROSECUTOR]: Correct.
>
> [DEFENSE COUNSEL]: Well, and inquiring with [defendant], he did not remember being admonished to that when he pled open. So I wanted to verify on the record that that was done."

The court went off the record and reviewed the transcript from the last court appearance. The court determined it had incorrectly admonished defendant about the consequences of pleading guilty to count I in case number 19-CF-127. The court then said:

"[Defense counsel], I'm going to allow your client to withdraw his plea of guilty at this point in time, since the charge does not match with the admonishment, and the Court does not have the authority to overrule the State on the way they charged the case. So I'm, at this point in time, vacating the defendant's plea of guilty.

What would you like me to do?"

Defense counsel requested a pretrial conference, as he wanted to discuss the issues with defendant. The prosecutor then said that because he learned from the PSI that this was defendant's fifth DUI rather than his fourth, the State would amend the charging instrument in case number 19-CF-127 to charge aggravated DUI as a Class 1 felony. Defendant raised no objection.

¶ 12          On June 4, 2020, the State charged defendant by information with an additional count III in case number 19-CF-127. The State alleged defendant committed aggravated DUI on August 5, 2019, and the offense was a Class 1 felony based on defendant's four prior DUI convictions.

¶ 13          On October 6, 2020, defendant entered an open plea of guilty to count III in case number 19-CF-127. This time, the court properly admonished defendant about the sentencing consequences of the plea. The State agreed to nol-pros counts I and II of case number 19-CF-127, along with some traffic charges. The court accepted the plea. When the court mentioned ordering a PSI, defense counsel reminded the court a PSI had already been prepared.

The court expressed its belief that the earlier PSI related only to case number 16-CF-42. Defense counsel corrected the court:

> "It was from the 19-CF-127. It was because he had not been admonished on the nonprobationable, and we took the plea back and reset it. The PSI's done and he's been in custody ever since."

¶ 14 On December 1, 2020, the matter came for sentencing in case numbers 19-CF-127 and 16-CF-42. By stipulation, as the State's evidence in aggravation, the prosecutor offered a summary of two witnesses' testimony regarding defendant's conduct preceding the traffic stop that gave rise to case number 19-CF-127. Specifically, on August 5, 2019, construction work on I-39 near U.S. 24 caused southbound traffic to be reduced to one lane. Two commercial vehicles then crashed in this area and spilled oil on the road. As a result, the sole southbound lane had to be closed. Traffic was redirected off the interstate at exit 22 while tow operators addressed the crash. Fire department personnel redirected traffic using road flares and "multiple fire department apparatuses with emergency lights activated." At 10:11 p.m., a fire chief saw defendant's truck drive around the roadblock and head south on I-39. The fire chief alerted a state trooper, who waited for the truck. At 10:17 p.m., the trooper saw defendant's truck and initiated a traffic stop. The trooper then used a loudspeaker to direct defendant to pull ahead and to the right, but defendant did not follow those instructions. Upon speaking with defendant, the trooper initiated a DUI investigation.

¶ 15 The defense offered no evidence in mitigation apart from a handwritten statement from defendant that had been attached to the PSI. In that handwritten statement, defendant asserted he would serve his sentence with "honor, integrity and supplication." He expressed his

desire to be reunited with his family as soon as possible. He vowed to abstain from alcohol for the rest of his life, and he "humbly apologize[d]" for his poor judgment.

¶ 16　　　　The prosecutor requested prison sentences of 10 years in case number 19-CF-127 and 5 years in case number 16-CF-42. The prosecutor asked the court to use its discretion to make those sentences consecutive. Defense counsel requested concurrent sentences of five years in case number 19-CF-127 and four years in case number 16-CF-42.

¶ 17　　　　The court noted it considered the factual basis for the plea, the PSI, the State's evidence in aggravation, the parties' arguments, and defendant's handwritten statement. As a mitigating factor, the court determined defendant did not contemplate his criminal conduct would cause or threaten serious physical harm. Nevertheless, the court deemed it aggravating that defendant's conduct indeed threatened such harm. The court found defendant's actions "very bothersome." The court observed that "defendant endangered himself and all of the workers that were present on the scene trying to clean up the accident."

¶ 18　　　　The court also considered defendant's history of criminal activity, including DUIs. The court stated it reviewed the plea agreement presented to the court in 2016 when defendant originally pleaded guilty to aggravated DUI in case number 16-CF-42. The court explained that this plea agreement listed only two prior DUI convictions for defendant, not three. Thus, in 2016, defendant got a "monumental break that was inconsistent with the law" when he received probation and a jail sentence for what could have been a nonprobationable offense. The court added that defendant "failed to take advantage of that gift or mistake" when he committed another DUI offense in August 2019.

¶ 19　　　　The court believed a prison sentence was necessary to protect the public and to deter others from committing DUIs, particularly in areas where first responders work. However,

the court did not believe consecutive sentencing was warranted. The court sentenced defendant to 10 years in prison in case number 19-CF-127, to be served concurrently with a 5-year prison sentence in case number 16-CF-42.

¶ 20        Defendant retained new counsel. Defendant moved to withdraw the guilty plea and to reconsider the sentence. The motion to withdraw the guilty plea was *pro forma*. Without further explanation, defendant alleged his plea was not knowing and voluntary, it was not supported by an adequate factual basis, and he was not properly admonished. In the motion to reconsider the sentence, defendant alleged his "physical wellbeing and/or mental state" prevented him from making a statement in allocution and assisting his counsel at the sentencing hearing. Defendant also maintained his sentence was excessive.

¶ 21        Defendant later supplemented his motions. Relevant to this appeal, defendant alleged ineffective assistance of counsel for failing to object when the court vacated the guilty plea to count I in case number 19-CF-127. According to defendant, that plea "was improperly withdrawn *** and such allowed the State to file in [*sic*] Count III." With no further elaboration, defendant asserted his "plea to Count III constitutes double jeopardy." Defendant also alleged, without further elaboration, that the court erred in vacating defendant's plea to count I.

¶ 22        On June 8, 2021, the court denied defendant's motions. During the hearing, defendant's allegation of a double jeopardy violation was not addressed. Defendant timely appealed. This appeal pertains solely to case number 19-CF-127.

¶ 23                                II. ANALYSIS

¶ 24                        A. Vacatur of Defendant's First Guilty Plea

¶ 25        Defendant argues the trial court violated his double jeopardy rights and abused its discretion by *sua sponte* vacating the first guilty plea. As his relief, defendant asks us to reinstate

his open guilty plea to count I of the indictment. Defendant claims he preserved this issue for review because he raised essentially the same arguments after he was sentenced pursuant to his second plea. Alternatively, defendant frames the issue through the lenses of second-prong plain error and ineffective assistance of counsel. The State responds that defendant failed to preserve his challenge to the court vacating the first guilty plea. The State further argues defendant's affirmative acquiescence to vacating the plea forecloses plain-error review. The State also contends defendant's arguments are meritless.

¶ 26        We will first consider whether defendant's arguments are reviewable as a preserved issue, as matter of plain error, or for ineffective assistance of counsel. Before defendant was sentenced on count I of the indictment pursuant to his open guilty plea, defense counsel told the court defendant did not remember being admonished when he pleaded guilty that the offense was nonprobationable. Defense counsel asked the court to "verify on the record that that was done." As defendant's appellate counsel acknowledged during oral argument, the trial court may have interpreted trial counsel's request as a motion to vacate the plea. The court reviewed the transcript of the plea hearing and determined defendant was improperly admonished. The court said it would "allow [defendant] to withdraw his plea of guilty." If the court was mistaken about whether defendant was asking to withdraw his plea, neither defendant nor defense counsel corrected the court. Instead, when the court vacated the plea and solicited defense counsel's input about what "to do," counsel asked to set a pretrial conference. The prosecutor then said the State would "amend[ ] the charge to a Class 1 felony" because it learned from the PSI that defendant had four prior DUI convictions, not three. The defense raised no objection to the State modifying the classification of the aggravated DUI charge. The court set the matter for a pretrial conference, as defense counsel suggested. When the State later charged

- 9 -

defendant with a Class 1 felony in a new count III, defendant did not assert double jeopardy as a defense or seek to reinstate the original plea. Instead, he pleaded guilty to count III. When defendant did so, his counsel reminded the court there was no need for a new PSI because "we took the plea back and reset it." It was not until defendant retained new counsel to challenge the second plea that defendant questioned, in a cursory manner, the propriety of vacating the first plea.

¶ 27        Under these circumstances, we determine defendant affirmatively acquiesced to the court's actions. " '[A] party cannot complain of error which that party induced the court to make or to which that party consented.' " *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 19 (quoting *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004)). Where a party acquiesces to a ruling, the party waives the right to challenge the ruling and may not invoke the plain-error doctrine. *Stewart*, 2018 IL App (3d) 160205, ¶¶ 19-21. A party who acquiesced to a ruling is limited to pursuing a claim of ineffective assistance of counsel. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101 (2011). Accordingly, we will review defendant's challenge insofar as he alleges his plea counsel was "ineffective for acquiescing to the double jeopardy violation and the judge's capricious vacatur of the plea agreement."

¶ 28        Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Generally, to sustain a claim of ineffective assistance, a defendant must show that his counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient where he or she made errors that were so serious that he or she "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant establishes prejudice where "counsel's errors were so serious as to deprive the defendant

of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. In that respect, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 29        As we will explain, defendant's contention that the court violated his double jeopardy rights and abused its discretion by vacating the plea lacks merit. Thus, defendant cannot show prejudice, and his ineffective-assistance claim fails. See *People v. Gaines*, 2020 IL 125165, ¶ 59 ("[D]efendant cannot demonstrate prejudice because there is no reasonable probability that an objection would have resulted in the trial court permitting defendant to persist in his plea in light of defendant's repudiation of the factual basis.").

¶ 30        Both the United States and Illinois Constitutions prohibit double jeopardy. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. These principles are also codified in Illinois's Criminal Code of 2012. See 720 ILCS 5/3-4 (West 2020). "The prohibition against double jeopardy is designed to prevent the State from engaging in more than one attempt to convict an individual, thereby subjecting him to embarrassment, expense, continuing anxiety and insecurity, and increasing the possibility that he may be found guilty even if innocent." *People v. Cabrera*, 402 Ill. App. 3d 440, 446 (2010). Prohibiting double jeopardy protects defendants from " '(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.' " (Internal quotation marks omitted.) *Cabrera*, 402 Ill. App. 3d at 447 (quoting *People v. Henry*, 204 Ill. 2d 267, 283 (2003)).

¶ 31    The first question in a double jeopardy analysis is whether jeopardy attached. *Gaines*, 2020 IL 125165, ¶ 25. Here, the parties agree jeopardy attached on March 10, 2020, when the trial court unconditionally accepted defendant's open guilty plea to count I of the indictment. See *Gaines*, 2020 IL 125165, ¶ 34 ("[T]his court holds that jeopardy attaches when the trial court unconditionally accepts defendant's plea.").

¶ 32    The next question is "whether jeopardy terminated improperly." *Gaines*, 2020 IL 125165, ¶ 39. " 'In the parlance of double jeopardy case law, jeopardy "continues" if *** the jeopardy that attached in the first trial remains open so that defendant can be reprosecuted for the same crime without violating the bar against double jeopardy.' " *Gaines*, 2020 IL 125165, ¶ 39 (quoting *People v. Daniels*, 187 Ill. 2d 301, 310-11 (1999)). "Conversely, '[j]eopardy "terminates" if the trial concludes under conditions in which defendant could not be retried without violating the double jeopardy rule ***.' " *Gaines*, 2020 IL 125165, ¶ 39 (quoting *Daniels*, 187 Ill. 2d at 311).

¶ 33    Here, the trial court *sua sponte* vacated defendant's open guilty plea to count I of the indictment. More than 70 years ago, our supreme court held as follows:

> "[A] court may set aside or withdraw a plea of guilty, on its own motion and without the consent of a defendant, in cases where the evidence shows that the defendant is insane, or under some similar disability, or where the court has good reason to doubt the truth of the plea, or where it is affirmatively shown that the plea of guilty was induced by some promise on the part of the State's Attorney or others in authority, *or where it is obvious that a defendant has been misinformed as to his rights*." (Emphasis added.) *People v. Hancasky*, 410 Ill. 148, 154-55 (1951).

If a trial court properly exercises its discretion by *sua sponte* vacating a guilty plea, then jeopardy does not terminate improperly and there is no double jeopardy violation. See *Gaines*, 2020 IL 125165, ¶ 55 ("Because the trial court did not abuse its discretion in vacating defendant's guilty plea *sua sponte*, defendant's bench trial did not offend the bar against double jeopardy."). " 'An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court.' " *Gaines*, 2020 IL 125165, ¶ 45 (quoting *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009)).

¶ 34    We hold that the trial court did not abuse its discretion by vacating defendant's guilty plea to count I of the indictment. Before the court accepted that plea, the court incorrectly told defendant he could receive probation. At the next court date, when the matter was set for sentencing, it seems defendant may have been confused as to whether he was eligible for probation. As the State argues, upon reviewing the transcript of the plea hearing, it was obvious defendant had been "misinformed as to his rights." *Hancasky*, 410 Ill. at 155. Thus, the trial court was authorized to vacate the plea *sua sponte*. We determine the trial court acted within its discretion. By vacating the plea, the court likely believed it was both protecting defendant's rights and preempting any question down the road as to whether defendant knowingly and voluntarily pleaded guilty. We emphasize that when the court vacated defendant's plea, the court received no objection from the defense. Nor had the State yet indicated its intent to enhance defendant's aggravated DUI charge.

¶ 35    In arguing that there was a double jeopardy violation and an abuse of discretion, defendant notes he was properly informed at his arraignment/bond hearing in August 2019 that count I was a nonprobationable offense. Thus, defendant asserts he was "actually aware that the minimum term did not include probation and was not otherwise prejudiced by the judge's

- 13 -

incorrect admonishment" at the plea hearing in March 2020. Defendant labels it a "minor" flaw that the court incorrectly told him at the plea hearing that he was eligible for probation. Defendant also maintains that, had he explicitly requested the court to vacate the guilty plea, the court would have been under no obligation to do so.

¶ 36     Defendant's arguments are unconvincing. As the State correctly points out, "[t]he question was not whether vacating the plea was required, but whether the court had discretion to vacate the plea *sua sponte*." Moreover, the record gives us no confidence that defendant was aware of the sentencing consequences when he pleaded guilty to count I. Defendant received proper admonishments at the arraignment/bond hearing on August 6, 2019. However, defendant then left the jurisdiction, and he did not return to court in Illinois until January 2020. By that time, defendant exhibited symptoms of temporary psychosis, apparently induced by substance abuse. On March 10, 2020, before the court accepted defendant's guilty plea, the court misadvised defendant about the plea's sentencing consequences. Considering that defendant experienced psychosis in the interim and then was affirmatively misled as to the sentencing consequences, there is little reason to place stock in the correct admonishments defendant received months earlier.

¶ 37     Defendant proposes that, instead of vacating the guilty plea, the trial court should have readmonished him and then asked him whether he wished to persist with his plea. Although the court could have taken that approach, defendant cites no case requiring the court to do so. As explained above, the court was vested with discretion to vacate the plea when it became obvious defendant was misinformed as to his rights.

¶ 38     As we determine that the trial court acted within its discretion by vacating the guilty plea to count I, jeopardy did not terminate improperly. Thus, defendant was not subjected

to double jeopardy when the State filed a new count III or when defendant pleaded guilty to that count. Having failed to demonstrate either a double jeopardy violation or an abuse of discretion, defendant has not shown prejudice from his trial counsel's failure to preserve these issues for review. Accordingly, we hold that defendant did not receive ineffective assistance of counsel in the manner defendant claims.

¶ 39        We emphasize that our analysis is limited to whether there was a double jeopardy violation and whether the trial court abused its discretion under the circumstances presented. As a means of presenting these issues, defendant contends that defense counsel was ineffective for failing to recognize the double jeopardy issue and for failing to object to the trial court's allegedly "arbitrary procedures." On the authority of *Hancasky*, we reject those specific arguments. During oral argument in this matter, this court questioned the attorneys as to whether defendant's trial counsel also was ineffective for (1) bringing the issue of faulty admonishments to the trial court's attention on June 2, 2020, and then (2) failing to ask the court to proceed with defendant's original guilty plea. In response to those questions, defendant's appellate counsel argued that there was "not enough in the record to know why [defendant's trial counsel] did what he did." We agree, as the record is silent as to what conversations defendant had with his counsel. See *People v. Veach*, 2017 IL 120649, ¶ 46 (issues are better suited to collateral proceedings when the record on direct appeal is "incomplete or inadequate for resolving the claim").

¶ 40                              B. Vindictive Prosecution

¶ 41        Defendant next argues the prosecutor was vindictive for charging him with Class 1 aggravated DUI after the court allowed him to withdraw his guilty plea to the Class 2 version

of the offense. Defendant recognizes he did not raise this issue below. Defendant asks us to review the issue for second-prong plain error and for ineffective assistance of counsel.

¶ 42        "Under plain-error review, we will reverse a forfeited error if the error was clear and obvious and either (1) the evidence was so closely balanced the error alone threatened to tip the scales of justice against defendant or (2) the error was so serious it affected the fairness of defendant's trial and challenged the integrity of the judicial process. *People v. Jophlin*, 2018 IL App (4th) 150802, ¶ 59. Our first step is to determine whether any error occurred. *Jophlin*, 2018 IL App (4th) 150802, ¶ 59. If the prosecutor was not vindictive, a defendant cannot obtain relief for vindictiveness pursuant to either the plain-error doctrine or a claim of ineffective assistance. See *Jophlin*, 2018 IL App (4th) 150802, ¶¶ 65, 68.

¶ 43        "The filing of criminal charges is a discretionary matter resting within the exclusive jurisdiction of the prosecution." *People v. Flanagan*, 201 Ill. App. 3d 1071, 1076 (1990). "One purpose of instituting criminal proceedings against an individual is to punish; therefore, the presence of a punitive motivation behind prosecutorial action does not render such action constitutionally violative." *People v. Hall*, 311 Ill. App. 3d 905, 911 (2000). Nevertheless, "[a]s a general matter, a prosecution is vindictive and violates due process if it is undertaken to punish a defendant because he has done 'what the law plainly allows him to do.' " *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 15 (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). In other words, "vindictiveness principles are triggered when a prosecutor without notice increases the possible sanction severity for no valid reason after the defendant has exercised a procedural right." *People v. Walker*, 84 Ill. 2d 512, 523-24 (1981) (plurality opinion).

¶ 44        In some cases, the facts give rise to a presumption of vindictiveness. "Ordinarily, a presumption of prosecutorial vindictiveness exists where a prosecutor brings additional charges

- 16 -

and more serious charges against a defendant after the defendant has successfully overturned a conviction, effectively subjecting the defendant to greater sanctions for pursuing a statutory or constitutional right." *Rendak*, 2011 IL App (1st) 082093, ¶ 16. "No such presumption, however, automatically exists in the pretrial setting where a prosecutor has broad discretion in charging a defendant." *Rendak*, 2011 IL App (1st) 082093, ¶ 16.

¶ 45    Here, the parties submit competing views about whether the presumption of vindictiveness applies. Defendant argues the presumption applies, though he candidly acknowledges the facts do "not squarely fit within the framework of prosecutorial vindictiveness case law." Defendant relies on cases where the State filed new or enhanced charges after *the defendant* successfully challenged his initial conviction—through an appeal or a motion to withdraw a plea, for example. Here, by contrast, the trial court *sua sponte* vacated defendant's guilty plea upon discovering that the court had admonished defendant incorrectly.

¶ 46    Courts have held the presumption of vindictiveness does not arise when the prosecution modifies charges after a trial court *sua sponte* declares a mistrial. See *United States v. Whaley*, 830 F.2d 1469, 1479 (7th Cir. 1987), *abrogated in part on other grounds by*, *United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990); *Sisson v. State*, 985 N.E.2d 1, 11-12 (Ind. Ct. App. 2012). The reason is that, if the defendant "exercised no statutory or constitutional right," he cannot claim he was penalized for or discouraged from exercising such right. *Whaley*, 830 F.2d at 1479.

¶ 47    This reasoning applies here. The premise of the prohibition against vindictive prosecutions is that it is improper "[t]o punish a person because he has done what the law plainly allows him to do." *Goodwin*, 457 U.S. at 372. Where a trial court *sua sponte* vacates an open guilty plea before sentencing to correct its own error, the defendant has exercised no right for

which he could be punished vindictively. Moreover, courts recognize a presumption of vindictiveness only in situations where there is a "realistic likelihood" of vindictiveness, as opposed to "a mere opportunity for vindictiveness." (Internal quotation marks omitted.) *Goodwin*, 457 U.S. at 384. We see no realistic likelihood a prosecutor would punish a defendant for a trial court correcting its own mistake in giving faulty admonishments.

¶ 48            Even if the presumption of vindictiveness applied here, we believe the State rebutted it. The prosecutor had a valid reason to enhance the classification of defendant's aggravated DUI charge, as the PSI revealed defendant had four prior DUI convictions, not three. Although defendant insists the State "had all the information available to it to charge the Class 1 offense when it initially brought charges," the pretrial bond report did not list defendant's 1985 DUI conviction. Defendant insists "it was the State's responsibility to exercise its due diligence to be aware of the number of [his] prior convictions." But even if the State could have or should have discovered the 1985 conviction sooner, inadvertence or negligence is not vindictiveness. This is not a case like *People v. Brexton*, 405 Ill. App. 3d 989, 995 (2010), for example, where the State knew all relevant facts before the defendant entered his guilty plea. There is also no support for defendant's assertion that the prosecutor's "explanation was disingenuous" as to the reason for enhancing the charge. Nor can defendant claim surprise, as he presumably knew his own criminal record.

¶ 49            The State thus acted appropriately when it filed a new charge upon receiving new information. Accordingly, we reject defendant's claims of plain error and ineffective assistance of counsel.

¶ 50                              C. Excessive Sentence

¶ 51            Finally, defendant argues his 10-year sentence is excessive.

¶ 52    The Illinois Constitution specifies that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. The purposes of sentencing include retribution, deterrence, incapacitation, and rehabilitation. *People v. Wheeler*, 2019 IL App (4th) 160937, ¶ 37. "Which of these purposes predominates in a given case is a matter left to the sound discretion of the trial court." *Wheeler*, 2019 IL App (4th) 160937, ¶ 37. We accord great deference to the trial court's sentencing decision because that court is " 'in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *People v. Klein*, 2022 IL App (4th) 200599, ¶ 38 (quoting *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15). We presume a sentence is proper if it falls within the statutory penalty range. *Klein*, 2022 IL App (4th) 200599, ¶ 37. Absent explicit evidence to the contrary, we also presume the court considered all mitigating factors. *People v. Harris*, 2015 IL App (4th) 140696, ¶ 57. "A sentence within the statutory range will not be deemed excessive, and will not be disturbed, unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Harris*, 2015 IL App (4th) 140696, ¶ 55.

¶ 53    Defendant maintains the trial court "did not meaningful[ly] take into account the fact that [defendant] accepted responsibility for his actions." He also contends his history of abusing alcohol should be deemed a mitigating factor in light of his nonviolent criminal history. According to defendant, he "is in greater need of treatment than a lengthy period of incarceration." Defendant further asserts the court did not fully consider his potential for rehabilitation. In that respect, defendant notes he has an associate degree, he previously owned a

business, he responded well to alcohol abuse treatment in the past, and he expressed a desire to abstain from alcohol.

¶ 54        Defendant was under the influence of alcohol when he drove around a roadblock meant to protect workers who were responding to an accident in a construction zone. This was defendant's fifth DUI offense, and he also had a long history of other traffic violations. Fortunately, a police officer pulled defendant over before anybody got hurt. The trial court recognized that, although defendant did not contemplate harming anyone, the result easily could have been different. The court also considered that defendant failed to take advantage of his lenient sentence for aggravated DUI in 2016. Defendant wrote a note apologizing for his actions, vowing to abstain from alcohol and to serve his sentence with "honor, integrity and supplication." However, defendant also left Illinois after he posted bond in this case, and he apparently returned in a substance-induced psychosis.

¶ 55        The sentencing range was 4 to 15 years in prison. 730 ILCS 5/5-4.5-30(a) (West 2018). The court also had the discretion to order defendant's sentence to run consecutively to his sentence in case number 16-CF-42. 730 ILCS 5/5-8-4(c)(1) (West 2018). The court sentenced defendant to 10 years in prison and declined to impose consecutive sentencing.

¶ 56        We find no abuse of discretion. Clearly, defendant has an alcohol-abuse problem and would benefit from treatment. To that end, we note the trial court recommended defendant for a substance abuse program operated by the Department of Corrections. Defendant also has the potential for rehabilitation, and nothing in the trial court's ruling suggested otherwise. On the other hand, defendant's addiction and poor choices have manifested themselves repeatedly in actions that endanger the public, leaving the trial court with no choice but to impose a prison sentence. We determine the trial court properly accounted for and weighed all relevant factors

and circumstances. We cannot say defendant's sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.

¶ 57                                    III. CONCLUSION

¶ 58         For the reasons stated, we affirm the trial court's judgment.

¶ 59         Affirmed.

---

*People v. Page*, **2022 IL App (4th) 210374**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Woodford County, No. 19-CF-127; the Hon. Michael L. Stroh, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Stephanie T. Puente, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Gregory Minger, State's Attorney, of Eureka (Patrick Delfino, David J. Robinson, and Linda Susan McClain, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---